**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 24-cr-456-3 (TJK)** |
| | : | |
| **MICHAEL AUGMENT,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits its Memorandum in Aid of Sentencing.   For the reasons herein and in accordance with the plea agreement, the Government requests that the Court sentence the defendant to 87 months of incarceration and impose a period of five years of supervised release.

**I.     SENTENCING FACTORS**

In sentencing a defendant, after calculating the appropriate Guideline range, the Court must consider the factors set forth in 18 U.S.C. § 3553.[1]   *See Gall v. United States*, 552 U.S. 38 (2007). These factors are in keeping with the traditional factors used by courts when imposing a sentence: (1) the protection of society against wrongdoers; (2) the punishment or discipline of the wrongdoer; (3) the reformation of the wrongdoer; and (4) the deterrence of others from the commission of like offenses.   *See Spanziano v. Florida*, 468 U.S. 447, 477-78 (1984) (Stevens, J., concurring); *see also Williams v. New York*, 337 U.S. 241, 251 (1949).   Further, under the Guidelines and Section 3553, similarly situated defendants should receive like punishments.   *See* 18 U.S.C. § 3553(a)(6).

---

[1]   The Pre-Sentence Report (PSR) correctly states that the Guideline range is 87-108 months.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

As set forth in the proffer submitted in support of the plea agreement, defendant Michael Augment conspired with others to distribute and possess with the intent to distribute fentanyl in Washington, D.C.   In particular, he sold fentanyl to a Confidential Human Source (CHS) on three occasions.   These sales included a sale on May 3, 2024 of 157.26 grams of fentanyl for $4,000, and a sale of 278.27 grams of fentanyl for $8,750.   In addition, after he left a co-conspirator's apartment in Washington, D.C. on July 30, 2024, Virginia State Police stopped his vehicle.   They recovered a small amount of fentanyl and $12,473 in cash.   They also recovered a ledger with money orders totaling $32,478.   In a search of his home, agents found approximately $27,000 in cash, a heat sealer, and a handgun case.   The defendant admits that he is responsible for 400 to 1.2 kilograms of fentanyl including the amounts reasonably foreseeable to him in the conspiracy.

## III.   SECTION 3553 FACTORS

As noted above, after calculating and consulting the appropriate Guideline range, the Court must consider the factors set forth in 18 U.S.C. § 3553(a).   The Government addresses the relevant factors in this case below.

### A.  Nature and Circumstances of the Offense

The nature of this offense is undoubtedly serious.   The defendant repeatedly distributed fentanyl in redistribution quantities to a CHS. His illegal conduct spanned April 2024 through October 2024 so this was not a one-time indiscretion by the defendant.

Further, as the Court knows, fentanyl is an extremely lethal drug.   Two milligrams of fentanyl can be fatal.   *See United States v. Glasgow*, 2021 WL 2403136 at *7 (D.D.C.) (Lamberth, J.).   According to the DEA, "[f]entanyl is a Schedule II controlled substance that is similar to

morphine but about 100 times more potent. . . . Because of its potency and low cost, drug dealers have been mixing fentanyl with other drugs including heroin, methamphetamine, and cocaine, increasing the likelihood of a fatal interaction. . . . Two milligrams of fentanyl can be lethal depending on a person's body size, tolerance and past usage."[2] According to the Centers for Disease Control, D.C. ranked number one in the nation for drug overdose deaths, based on the age-adjusted rate of deaths per 100,000 persons in 2021.  For opioid overdose deaths specifically in 2021, D.C. ranked number two in the nation, trailing just behind West Virginia by 7%.[3]  In 2022, D.C. had a record 448 opioid overdose deaths – on average, 37 opioid overdose deaths per month.[4] This is up from 427 in 2021, and 411 in 2020, according to the city's medical examiner. Six out of ten fentanyl-laced fake prescription pills analyzed contain a potentially lethal dose of fentanyl.[5] The defendant repeatedly sold large quantities of fentanyl to a CHS.   Accordingly, the Government views this as a serious offense that is deserving of a lengthy sentence.

### B. Deterrence and the Need to Protect the Public

As noted above, agents recovered a gun case from the defendant's residence.   While that does not conclusively prove that he possessed firearm in connection with the drug conspiracy, the Government notes that the illegal possession of firearms is inherently dangerous.   *See, e.g.*, *United States v. Gassaway*, No. 21-CR-550 (RCL), 2021 WL 4206616, at *3 (D.D.C. Sept. 16, 2021)

---

2 https://www.dea.gov/resources/facts-about-fentanyl

3 https://www.wusa9.com/article/news/local/dc-health-advocates-urge-mayor-to-declare-opioid-crisis-a-public-health-emergency/65-8cad9abd-af25-4013-bcb1-51e8e67dfa84;
https://www.cdc.gov/drugoverdose/fatal/dashboard/index.html

4 https://www.wusa9.com/article/news/local/dc-health-advocates-urge-mayor-to-declare-opioid-crisis-a-public-health-emergency/65-8cad9abd-af25-4013-bcb1-51e8e67dfa84; https://www.washingtonpost.com/dc-md-va/2023/04/04/dc-vending-machine-opioids-narcan/

5 https://www.dea.gov/onepill

(collecting cases in this district holding that unlawful firearm possession is dangerous to the public); *United States v. Howard*, No. 20-MJ-181 (BAH), 2020 WL 5642288, at *2–3 (D.D.C. Sept. 21, 2020) (making same observation); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great potential to escalate into violence"). Accordingly, for this additional reason, the Government believes a substantial sentence is necessary for purposes of deterrence.

C. **History and Characteristics of the Defendant**

Defendant Augment has a felony drug conviction from Fairfax County in 2015 and one from Montgomery County in 2011.   He has a weapons conviction from New York in 2010.   He has several other convictions for petty offenses and 18 prior arrests.   He generally received suspended sentences for his prior convictions.   *See, e. g., Qualis v. United States*, 373 F. Supp. 2d 873, 877 (E.D. Wisc. 2005) ("It is appropriate for a court, when considering the type of sentence necessary to protect the public and to deter future misconduct, to note the length of any previous sentences imposed.")

On the other hand, the Government acknowledges that he accepted responsibility for his own actions in this case.   The Government is also sympathetic to the defendant's difficult upbringing as outlined in the PSR.   In addition, despite his lack of formal education, the defendant is intelligent and has shown the ability to be gainfully employed.   Unless he overcomes his addiction issues, however, he will be at risk of finding himself in another criminal case with a federal narcotics conviction as part of his criminal history.

### D.    <u>Need to Avoid Sentencing Disparities</u>

A sentence within the Guidelines will generally avoid unwanted sentencing disparities among defendants who have committed similar crimes.  Indeed, "[t]he best way to curtail 'unwarranted' disparities is to follow the Guidelines, which are designed to treat similar offenses and offenders similarly." *United States v. Otunyo*, 63 F.4th 948, 960 (D.C. Cir. 2023) (quoting *United States v. Bartlett*, 567 F.3d 901, 908 (7th Cir. 2009).  The Government is asking for a sentence at the low end of the Guideline range in this case.

### IV.    <u>CONCLUSION</u>

For the reasons stated herein, the Government requests that the Court impose a sentence of 87 months.  The Government will move to dismiss the remaining counts of the indictment at sentencing pursuant to the plea agreement.

Respectfully submitted,

JEANINE PIRRO
UNITED STATES ATTORNEY


BY:    _____/s/_____
NIHAR MOHANTY
Assistant United States Attorney
D.C. Bar Number 436686
SOLOMON EPPEL
D.C. Bar Number 1046323
United States Attorney's Office
601 D Street, NW
Washington, DC   20530
Telephone: (202) 252-7700
Email: Nihar.Mohanty@usdoj.gov